## Chicago, R. I. & P. Ry. Co. v. Arthur Rathburn.

1. VERDICTS—*On Conflicting Evidence, Conclusive.*—A verdict on conflicting evidence settles the questions of fact at issue and is not to be disturbed unless for some error of law.

2. DAMAGES—*$9,000, When Not Excessive.*—The loss of a foot and

hand to a man under fifty years of age and in full vigor, who previously earned in his employment from $75 to $80 a month, and has since been unable to earn anything, is a stubborn, serious fact, and without considering at all the elements of physical pain endured, a verdict for $9,000 is affirmed.

**Trespass on the Case,** for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1899.  Affirmed.   Mr. Presiding Justice Horton not concurring.   Opinion filed July 17, 1900.

W. T. Rankin, attorney for appellant; Robert Mather, of counsel.

James C. McShane, attorney for appellee.

Mr. Justice Shepard delivered the opinion of the court.

This appeal is from a judgment for $9,000 recovered by the appellee against the appellant for personal injuries claimed to have been sustained by him because of the alleged negligence of the appellant.

Appellee was a switchman employed by appellant, and at the time of the injury was at work making up a train of freight cars in appellant's yards at Blue Island, near Chicago.   While engaged in coupling two cars together, his left foot was caught upon a rail by the wheel of the moving car that he was coupling, and crushed, and he was otherwise severely injured.

The specific negligence charged, in the single count of the declaration, is the permitting to remain between the tracks, of a pile of cinders upon and against which appellee stepped, without knowing or having reason to know of its presence, whereby his foot was caused to slide or slip down upon the rail and be caught by the car wheel.

The " yards " where the accident happened ran lengthwise from north to south, and were extensive, in the neighborhood of a mile long and about fifty tracks wide.   The tracks were numbered from west to east, and it was between tracks numbered thirty-two and thirty-three that the particular

pile of cinders in question is claimed to have been. A viaduct extended across the tracks and the accident occurred in that part of the yards north of it.

It was shown, and is not disputed, that the spaces between the tracks in different parts of the yards had been to a considerable extent filled in and graded with cinders and ashes, hauled from a locomotive ash-pit near the round house, and distributed by dumping from loaded cars, wherever needed for raising or leveling up the yards. It was the custom to level off the piles so made, shortly after being dumped.

The chiefly contested fact in the case was whether there existed, or not, a pile of cinders that had not been leveled off, or so high as to be dangerous, at the point where appellee stepped back from between the cars he was coupling. We will not take space to particularly discuss whether appellee, by reason of his previous work in and about the yards, was chargeable with knowledge of the condition of things between the tracks at the particular point and time in question, and, in consequence, assumed the risk of the presence of the cinders, for we think it was quite plainly made to appear that he had not recently worked in that part of the yards, and had had no reasonable opportunity to observe the condition of the tracks and ground thereabouts.

We do not observe that appellant's counsel deny it would be negligence to permit the presence of such a pile of cinders as appellee and his witnesses describe, to remain in the place mentioned in the yards. The contention in such respect is a denial that any such pile existed. Much evidence on that point was heard. Some eight or nine witnesses in behalf of appellee testified that the pile was there in a condition that would readily make the accident liable to occur in the manner testified to by appellee, and an equal or greater number of witnesses in behalf of appellant testified to the exact contrary. It was the peculiar province of the jury to determine what the truth was in such respect, and we are not at liberty to say they erred in their conclusion.

On the question whether the accident happened in con-

sequence of the existence of the pile of cinders—assuming that, as found by the jury, the pile was there—there is the evidence of only three witnesses : the appellee on the one side, and two other employes of appellant on the other. The three witnesses do not differ materially in their testimony concerning the act of coupling in which appellee was at the time engaged, the stooping position a part of his body necessarily sustained between the cars in order to make the coupling, the somewhat unusual difficulties and dangers of the situation, because of the kind of cars and couplings, the accomplishing of the act in which appellee was engaged, and his attempt to step out from between and aside from the cars.

The principal difference between them is as to the presence of the cinders, and the place occupied by appellee's foot when he was in the act of stepping away from the cars.

Appellee's testimony is to the effect that as he was stepping out his foot struck upon and against the cinders and slipped back upon the rail, and was caught by the moving wheel.

The other two witnesses concurred in their testimony that the cinder-filling at the point in question was level with the rail and was smooth and hard, and there was nothing to trip against; that appellee's foot was stationary upon the rail, and, at least inferentially, that it was not there because of the act of anything but his own volition or carelessness.

Appellee was an experienced switchman, and for him to voluntarily leave his foot resting upon a rail directly in front of a moving car, when he could as well move it as not, would probably ordinarily be an act of negligence on his part that would bar him from a recovery for a resulting injury. One of the two witnesses referred to testified that he stood near appellee at the moment—within from four to six feet of him—and the other stood about twenty-five feet away from him. They both say they were looking straight at him. Appellee testifies that as soon as he fell he saw these two men standing talking together about a car length away

from where he was, and that the back of one of them was
turned toward him; that he was looking toward them to see
how he could get clear from his position, and that one
of them exclaimed and called the attention of the other to
him.

It is always difficult to say where the truth is to be found
between conflicting statements of witnesses. It is on the
one hand said that appellee's interest was great in the
result of the case, and on the other it is said the two wit-
nesses opposed to him were interested and biased as
employes of the appellant. Such considerations are prop-
erly matters for a jury to take into account, as is also that
instinct of self-preservation which appellee, as an experi-
enced switchman, may be presumed to have had, that would
prompt him, if possible, to keep his foot off a rail upon
which a moving car was close at hand. 'About all that a
reviewing court can say in such a case of conflict in evi-
dence is that the verdict has settled the question.

Treating the questions of fact spoken of as having been
settled by the jury, the verdict should not be disturbed
unless for some error of law.

Upon the question of assumption of risk by appellee we
have already said all we desire to. No error is argued
with reference to the instructions. The only questions of
law that are argued relate to the admission and exclusion
of evidence.

Fault is found because appellee's counsel were permitted,
over the objection of appellant, to ask certain of appellant's
witnesses on cross-examination as to the condition with ref-
erence to cinders of spaces between tracks thirty and thirty-
one, and tracks thirty-one and thirty-two, west of the place
of the accident, and tracks forty and forty-one at a point
south; and as to the condition at the point of accident some
months after its occurrence.

The inquiries produced very little, if any, evidence favor-
able to appellee, and perhaps the point might be dismissed
with the remark that the effect of the error, if there was
any, was either favorable to the appellant or was so slight

the other way as not to justify a refusal of the judgment on that account.  If its effect had been to show a negligent course or custom by appellant of leaving piles of cinders scattered around the yards it would be different, but such was not its effect.  The evidence negatived such a custom and showed quite plainly that the custom was to level off the piles about as soon as they were dumped.  It does not seem to be in any manner disputed but that cinders and ashes were used for grading between tracks and ballasting ties all over the yards, and the fact that it was attempted to show, usually without success, that there existed here and there piles of unleveled cinders could not in our opinion have had any material effect on the minds of the jury in determining whether an unsafe and negligent quantity of cinders existed in a pile at the place of, and occasioned, the accident in question.  And this is especially so in view of the very explicit instruction in regard thereto given at the request of appellant as follows :

" 2.   There is no charge in the declaration in this case that the defendant railway company was negligent in the manner in which its tracks were in general constructed in the yard in question, or the manner in which the tracks in general were ballasted or graded.  The only act of negligence charged is the permitting of a pile of cinders to remain between two of the defendant's tracks, which was the cause of the accident, and you are instructed that you should not consider any evidence that may have been given in this case as to the general condition of the yard, or grading, as in any way tending to show that the defendant was guilty of any negligence by reason thereof."

Moreover, the condition as to cinders at other places than at the point of the accident was first gone into by appellant on the cross-examination of appellee, probably for the purpose of showing his knowledge of the condition of things, and his assumption of risk with reference thereto.

Although there may have been technical error in respect of the admission of such testimony, we do not see how the appellant was prejudiced by it.

The verdict was for a large amount and it would have been more satisfactory if the trial judge had required it to

be remitted to a less sum. The loss of a foot and hand to a man under fifty years of age and in full vigor, who had previously earned in his employment from $72 to $80 a month, and has since been unable to earn anything, is a stubborn and serious fact, without considering at all the elements of physical pain endured. While $9,000 is a large sum of money, how much less than that is full compensation in such a case? It would be a mere guess if we were to answer the inquiry.

The whole record being considered we discover no error sufficient to justify a reversal of the judgment and it will therefore be affirmed.

Mr. PRESIDING JUSTICE HORTON:

I can not concur. It has been frequently held and may be considered as a settled rule in this State, that where evidence is conflicting and a question is close and difficult of solution, instructions to the jury must be strictly accurate. It seems to me that the same rule should apply, under like circumstances, to the admission of testimony. That the testimony in this case was conflicting upon material questions, is certain, as is stated in the foregoing opinion. The appellee was permitted to show against the objection of appellant the condition as to piles of cinder in other parts of the extensive yards then and at other times, and as to the dumping of cinders at other times. As stated in the majority opinion, said yard is about a mile in length and wide enough to accommodate about fifty tracks. It was divided by a viaduct and that part north was called the north yard and that part south of the viaduct was called the south yard. Appellee was permitted to examine witnesses as to the condition in the south yard as well as between other tracks in the north yard. Thus appellee was permitted to introduce testimony as to cinder piles perhaps nearly a mile from the place of accident—in the south yard—as well as between other tracks in the north yard. I can not see how this court can determine that such evidence "could not * * * have had any material effect on the minds of the jury."